David W. MILLER, Plaintiff
and Appellant,

v.

STATE of Utah, By and Through the DI-
VISION OF CONSUMER PROTEC-
TION; and Salt Lake County, a political
subdivision of the State of Utah, Defen-
dants and Appellees.

STATE of Utah, By and Through the
DIVISION OF CONSUMER
PROTECTION, Plaintiff,

v.

Boyd L. JENTZSCH dba Quest Sport &
Fitness; Homestead Insurance Co.; and
International Special Events & Recre-
ation Association, Defendants.

No. 980014–CA.

Court of Appeals of Utah.

July 16, 1998.

Duane R. Smith, Salt Lake City, for Plain-
tiff and Appellant.

Jan Graham, Atty. Gen., Jeffrey S. Gray,
Asst. Atty. Gen., and Brendan P. McCullagh,
Salt Lake City, for Defendants and Appel-
lees.

Before DAVIS, BENCH and JACKSON,
JJ.

BENCH, Judge:

David W. Miller, the guarantor on a bond,
brings this appeal from a trial court's order
granting summary judgment to the appel-
lees. The trial court awarded judgment
against the issuer of the bond, Homestead
Insurance Company and International Spe-
cial Events & Recreation Association (Home-

stead), for the benefit of former members of Quest Sport & Fitness (Quest).[1] We affirm.

## FACTS

Country Court House Trust (CCH Trust) owned a health spa facility in South Jordan, Utah. CCH Trust leased the premises to Boyd Jentzsch, who operated the facility as Quest. Utah's Health Spa Services Protection Act (the Act) requires spa operators to obtain a bond for the benefit of any consumer damaged by the closing of the business. *See* Utah Code Ann. § 13–23–5(2)(b) (1996). Accordingly, Quest sought a fifty thousand dollar bond from Homestead. Homestead issued the bond, but only after Quest secured Miller's personal guarantee.

In 1995, Quest ceased doing business after filing for bankruptcy. The Utah Division of Consumer Protection (the Division) notified Homestead of Quest's default and demanded payment on the bond. Five months after Quest's closing, CCH Trust sold the facility to Salt Lake County (the County).

In August 1995, the Division filed an action on behalf of Quest members to recover the fifty thousand dollars under the Homestead bond. Thereafter, Miller filed an action against the Division and the County for declaratory and injunctive relief. Miller sought an order declaring that the rules promulgated under the Act require the County to honor the Quest membership contracts. Miller also sought an injunction to prevent the Division from collecting on the Homestead bond, pending the outcome of the declaratory action.

Miller's action for declaratory and injunctive relief was later consolidated with the Division's action to recover on the bond. The parties filed cross-motions for summary judgment. After hearing arguments, the trial court granted the Division's motion for summary judgment and awarded the bond amount to the Division on behalf of the former Quest members. The trial court also dismissed Miller's complaint.

Miller appealed the dismissal to the Utah Supreme Court. Homestead did not appeal the judgment against it. The supreme court transferred Miller's appeal to this court under Rule 42(a) of the Utah Rules of Appellate Procedure.

## ISSUE and STANDARD OF REVIEW

■ Miller argues the trial court erred in concluding that the County, as a political subdivision of the state, is not subject to the provisions of the Act. "The appropriate standard of review for a trial court's interpretation of statutory law is correction of error." *Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993).

## ANALYSIS

Section 13–23–5 of the Utah Code requires health spa facility operators to "obtain and maintain: (i) a performance bond issued by a surety." Utah Code Ann. § 13–23–5(2)(a)(i) (1996). In the event a health spa goes out of business, the bond must be paid to the Division for the benefit of consumers incurring damages. *See id.* § 13–23–5(2)(b). The Act defines a health spa as follows:

> "Health spa" means any person, partnership, joint venture, corporation, association, or other entity that, for a charge or fee, provides as one of its primary purposes services or facilities that are purported to assist patrons to improve their physical condition or appearance through change in weight, weight control, treatment, dieting, aerobic conditioning, strength training, or other exercise.

*Id.* § 13–23–2(3)(a) (1996). The facility initially operated by Quest falls squarely within the Act's definition of a health spa. However, the Act expressly exempts certain entities from its provisions.

> "Health spa" does not include:
>
> (i) any facility operated by a licensed physician at which the physician engages in the practice of medicine;
>
> (ii) any facility operated by a health care provider, hospital, intermediate care facility, or skilled nursing care facility;

---

1. The former Quest members incurred damages when Quest ceased doing business and failed to refund the unused portion of paid membership fees.

(iii) any public or private school, college, or university;

(iv) *any facility owned or operated by the state or its political subdivisions;*

(v) any facility owned or operated by the United States or its political subdivisions.

*Id.* § 13–23–2(3)(b) (emphasis added). As a political subdivision of the state, *see* Utah Const. art. XI, § 1, the County is not subject to the Act. Thus, the trial court correctly concluded that the "County is exempt from the operation of the Act under the clear and unambiguous language of Section 13–23–2."

■ Miller argues "that the legislature intended a spa operated by the government to be exempt only from the bonding requirements of the Act, but not from the other protections of [the] Act, as defined by the rules of the Division." Miller speculates that the legislature saw no reason to require a bond because the state has unlimited resources and could ensure that the contract holders receive their money. He further speculates that because the state exempts itself from bonds in other areas such as prejudgment writs, injunctions, and appeals, the legislature must have exempted the state only from the bond required by the Act. Miller, however, does not cite any authority supporting those conclusions. We therefore decline his invitation to conclude that the legislature intended the exemption to apply only to the bond requirements.

■ Miller further contends that because agency rules apply to every health spa,[2] the County, as a "purchaser of a Health Spa Facility shall replace the Seller as a party to any unexpired Membership Contract and shall honor all Membership Contracts of the purchased facility in effect at the time of the purchase, pursuant to Section 13–23–5(2) of the Act." Utah Admin. Code R152–7–4(F)

(1994). The trial court ruled that "[b]ecause administrative regulations may not extend beyond the scope of a statute, the rules promulgated under the Act are invalid to the extent they appear to impose obligations upon Salt Lake County as a political subdivision of the State." We agree. To hold that the rules apply to a facility operated by the County would improperly expand the scope of the Act. This court has observed that "[a]n administrative agency's authority to promulgate regulations is limited to those regulations which are consonant with the statutory framework, and neither contrary to the statute nor beyond its scope." *Crowther v. Nationwide Mut. Ins. Co.,* 762 P.2d 1119, 1122 (Utah Ct.App.1988). We therefore hold that because the Act expressly excludes the County from its provisions, the County is not required to honor the unexpired contracts of Quest members. Thus, the trial court correctly dismissed Miller's claim.

## CONCLUSION

The administrative rules that may appear to require the County to honor the unexpired Quest memberships are invalid as applied to the County because the Act expressly excludes political subdivisions of the state from its provisions. We therefore affirm the trial court's dismissal of Miller's complaint. In light of our holding here, we need not reach the other issues raised.

DAVIS, P.J., and JACKSON, J., concur.

**2.** Rule 152–7–2 of the Utah Administrative Code provides that "[t]hese rules shall apply to the conduct of every Health Spa Business within the State of Utah." Utah Admin. Code R152–7–2 (1994).